IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MID CONTINENT CASUALTY COMPANY,

      Plaintiff/Counter-Defendant,

v.                                      CASE NO. 1:06-cv-00128-MP-AK

L. B. KING, d/b/a KING OIL AND TIRES,

      Defendant/Counter-Plaintiff.

_____/

## O R D E R

This matter is before the Court on Doc. 38, Defendant/Counter-Plaintiff King's Motion

for Partial Summary Judgment on Mid-Continent's Complaint for Declaratory Judgment and

King's Counterclaim, and on Doc. 40, Plaintiff's Motion for Summary Judgment.  The parties

have fully briefed both motions, and they are ripe for adjudication.  For the reasons given below,

the motion at Doc. 38 is denied in part and granted in part, and the motion at Doc. 40 is denied.

Since the 1960's, King  has owned and operated King's Oil & Tires, a gasoline service

station, in Cross City, Florida.  (See L.B. King Depo. at pp. 8-9; King's Answer at ¶2).  In

conjunction, King has operated since 1978 several Underground Storage Tanks ("USTs") that

hold various petroleum products including diesel, kerosene and gasoline (See L.B. King Depo. at

pp. 32, 49-50, 55, 60; Hirsh Depo. at p. 46).  In September 1997, King hired a petroleum

contractor to renovate several of the tanks (See Hirsh Depo. at pp. 45, 62-64).  The contractor, in

accordance with state law, retained a consultant to test for possible soil or groundwater

contamination.  *Id.* at 64.  The results of the testing, which King was unaware of at the time,

indicated diesel contamination.  (See L.B. King Depo. at pp. 72-73; Hirsch Depo. at pp. 70-74).

In 2003, King sought liability insurance to cover possible leaks from the tanks as

required by state and federal financial responsibility regulations.[1] (See Mid-Continent's

Statement of Material Facts In Opposition to Plaintiff's Statement of Material Facts, at ¶1-2;

King's Statement of Material Facts, at ¶1-2).  The regulations provide that:

> Owners or operators of petroleum underground storage tanks must
> demonstrate financial responsibility for taking corrective action
> and compensating third parties for bodily injury and property
> damages caused by accidental releases arising from the operation
> of petroleum underground storage tanks . . . .

40 C.F.R. 280.90, Subpart H; 280.93(a).

> The owner or operator of a facility, or individual tanks, if of
> different ownership, shall demonstrate financial responsibility . . .
> [t]he demonstration shall be made by the owner or operator in
> accordance with C.F.R. Title 40, Part 280, Subpart H.

F.A.C. Rule 62-761.400(3)(a)(1)-(2).

Mid-Continent, an insurance company organized under Oklahoma law, issued a policy to

King with a coverage period from April 3, 2003 to April 3, 2004, and a retroactive date of April

3, 1998.  (See Mid-Continent Complaint at ¶1; King's Request for Admissions at ¶8; Mid-

Continent's Answer to King's Request for Admissions at ¶8).[2]  The policy's retroactive date

---

[1] 40 C.F.R. § 280.90, Subpart H; F.A.C. Rule 62-761.400(3).

[2] The policy provides the following coverage (see Exhibit A to King's Answer, doc. 5):

**I.      Insuring Agreement**

Coverage A:
We will pay those sums that an **Insured** is legally obligated to pay as a result of **release(s)** from scheduled **Storage Tank System(s)** commencing after the Retroactive Date which results in **Bodily Injury** or **Property Damage** to which this insurance applies.  We will have a right and duty to defend any claim seeking those damages. All **claim(s)** must be reported to the company, in writing, by the Named Insured during the **Policy Period** or the Extended Reporting Period, if applicable.
Coverage B:
We will pay **clean-up costs** incurred by an **Insured** for **environmental damage** that an **Insured** is legally obligated to pay from scheduled **Storage Tank System(s)** as a result of a **Confirmed Release(s)** provided the Confirmed Release(s) commences after the Retroactive Date.  All claim(s) must be reported to the company, in writing, by the **Named Insured** during the **Policy Period** or Extended Reporting Period, if applicable.  This insurance applies only

indicated that claims occurring before April 3, 1998 would not be covered; claims occurring after April 3, 1998 and until April 3, 2004 would be covered, so long as they qualified under all other terms of the policy.[3]  (See Exhibit A to Mid-Continent's Complaint).  When he applied for the insurance, King did not disclose the 1997 diesel contamination.  (See Elwood Affidavit at ¶ 5).

The parties dispute whether King knew of the 1997 diesel contamination before 2003. King testified that he was unaware of the 1997 contamination when he applied for insurance coverage, but also that he may have received the 1997 contamination report before 2003.  (See L.B. King Depo. at pp. 175-177).   Even assuming King had reason to know of the 1997 contamination when he applied for coverage, he did not notify Mid-Continent of it until September 2003, when he made a claim for coverage under the policy.  (See Elwood Affidavit at ¶4-5).  In response, Mid-Continent immediately issued a Reservation of Rights letter, thereby preserving its right to deny coverage on King's claim.  In November, Mid-Continent denied coverage because the contamination occurred before the policy's retroactive date.  (See Elwood Affidavit at ¶6).

On March 9, 2004, King hired the same petroleum contractor to remove two additional tanks. (See L.B. King Deposition at p. 90).  Environmental assessments following this tank

---

if a limit is shown for Coverage B in the declarations page.

[3]The policy only covers "Confirmed Releases" which the policy defines as:

**Confirmed Release(s)** means a **Release** that has been investigated and confirmed by or on behalf of an **Insured** utilizing a system tightness check, site check or other procedure approved by the **Implementing Agency** in accordance with 40 C.F.R. 280.52 or another applicable federal or state regulation or state statute.

**Release(s)** means any spilling, leaking, emitting, discharging, escaping or leeching of one or more **Regulated Substances** from a **Storage Tank System** into groundwater, surfacewater, surface or subsurface soils, or the atmosphere.

removal revealed gasoline, kerosene and diesel contamination.  (See Hirsh Depo. at pp. 89-91,

97-102, 121-22).  On April 1, 2004, King filed a claim seeking coverage for clean-up costs.  (See

Mid-Continent's Statement of Material Facts In Opposition to Plaintiff's Statement of Material

Facts, at ¶4; King's Statement of Material Facts, at ¶4).

        The following day, Mid-Continent sent King a Reservation of Rights letter asserting

certain policy exclusions.   (See Mid-Continent's Statement of Material Facts In Opposition to

Plaintiff's Statement of Material Facts, at ¶6; King's Statement of Material Facts, at ¶6).  On

December 15, 2005, Mid-Continent denied coverage altogether on the grounds that the

contamination was not a "confirmed release,"[4] or a spill from the storage tank system, as defined

under the policy.    (See Mid-Continent's Statement of Material Facts In Opposition to

Plaintiff's Statement of Material Facts, at ¶9; King's Statement of Material Facts, at ¶9).

        Mid-Continent initiated the present case on June 26, 2006, and brought a claim for

declaratory relief seeking the following declarations:

(1) that the policy is void  *ab initio* pursuant to section 626.409, Florida Statutes (2007), due to

material misrepresentations by King; and

(2) that the policy does not cover the release reported April 1,2004 and Mid-Continent has no

duty to indemnify or defend any party under the policy regarding the release reported April 1,

2004, because (a) the policy excludes coverage for the alleged discharge because it is not a

"confirmed release" as that term is defined by the policy; and (b) the alleged discharge was prior

to the retroactive date of the policy and is thus excluded.

        King filed an Answer with affirmative defenses and a Counterclaim (Doc. 3).  In the first

---

[4]See *supra* note 3.

affirmative defense, King simply notes that the release for which he seeks coverage was discovered in March of 2004 and therefore after the retroactive date of 1998 and before the termination date, April 3, 2004.  In the second affirmative defense, King claims that Mid-Continent sent a reservation of rights letter on April 2, 2004 which only relied upon Exclusion G of the policy.  By doing so, King claims that Mid-Continent waived any other bases for not covering the claim, including misrepresentation.  In the third affirmative defense, King notes that he informed Mid-Continent about the 1997 discharge finding in September of 2003.   King argues that at that point, when Mid-Continent simply denied coverage of the 1997 discharge – rather than canceling the policy *ab initio* – Mid-Continent induced King to rely on the continued existence of coverage and thus Mid-Continent should be held to have waived any misrepresentation argument.  Finally, in the fourth affirmative defense, King claims that the failure to disclose the 1997 discharge was not material, in that Mid-Continent would have issued the policy anyway, and for the same premium.  As will become relevant below, King did not include an affirmative defense of federal preemption of state insurance law.

King's Counterclaim contains two counts, and is essentially the opposite of the Complaint.  The first count seeks a judgment declaring that Mid-Continent has a duty to pay "clean-up costs" for the discharge reported April 1, 2004, and imposing payment of reasonable attorney fees under Fla. Stat. §§ 86.081 and 627.428.  In the second count, King alleges that Mid-Continent breached the contract of insurance by failing to provide coverage for the "clean-up costs" associated with the discharge reported April 1, 2004.  He also seeks reasonable attorney fees under the statutes listed above.  Mid-Continent then filed (at Doc. 7) an Answer to the Counterclaim, including twenty-four affirmative defenses.

The parties then conducted discovery, and eventually both sides filed motions for summary judgment.  The first was King's motion for partial summary judgment. (Doc. 38).  In the motion for partial summary judgment, King argues that it is entitled to partial summary judgment on the following issues:  (1) Mid-Continent's claim that the subject policy is void *ab initio* because, King argues, federal law and the United States Environmental Protection Agency regulations, 42 U.S.C. § 6991b and 40 C.F.R. § 280, preclude rescission of King's policy *ab initio;* (2) Mid-Continent's claimed right to rescind the policy because Mid-Continent waived any such right to rescind; (3) Mid-Continent's claimed coverage defenses under any Exclusion in the Policy, because any such defenses have been waived by Mid-Continent pursuant to Fla. Stat. § 627.426(2); and (4) Mid-Continent's affirmative defenses to King's Counterclaim because Mid-Continent failed to present any evidence in support of any of its affirmative defenses.

Mid-Continent filed its own motion for summary judgment (Doc. 40), seeking a declaration that no coverage exists under the subject Policy.  In this motion, Mid-Continent raises two arguments, (1) that King has failed to carry his burden of establishing that the reported discharge originated from the tanks or related equipment; and (2) that King has failed to carry his burden of establishing that the reported discharge occurred during the covered period of the insurance policy.

## I.  Doc. 38, King's Motion for Partial Summary Judgment

### A.    Whether federal law and EPA regulations preclude the rescission, or voidance *ab initio*, of an underground storage tank insurance policy due to alleged misrepresentation by an insured.

In his motion for partial summary judgment, defendant L.B. King ("King") argues that EPA financial responsibility regulations for underground storage tanks ("USTs") preclude

rescission of UST insurance policies, even in cases of misrepresentation by an insured.

Furthermore, because Florida has expressly adopted the EPA's regulations in its own UST

financial responsibility regulations, King argues that EPA regulations govern in Florida and

rescission is prohibited. The regulation on point, 40 C.F.R. § 280.97 (2003), provides:

> Cancellation or any other termination of the insurance by the ["Insurer" or
> "Group"], except for non-payment of premium or misrepresentation by the
> insured, will be effective only upon written notice and only after the expiration of
> 60 days after a copy of such written notice is received by the insured.
> **Cancellation for non-payment of premium or misrepresentation will be
> effective only upon written notice and only after expiration of a minimum of
> 10 days after a copy of such written notice is received by the insured.**

(Emphasis not in original).  In the leading case interpreting this regulation, <u>Zurich American Ins.</u>

<u>Co. V. Whittier Properties, Inc.</u>, 356 F.3d 1132 (9th Cir. 2004), the Court held as follows:

> we hold that the EPA regulations, which Alaska has expressly adopted in its own
> state regulations, provide for the exclusive remedy of prospective cancellation of
> a UST insurance policy in the event of an insured's misrepresentation. Although
> Alaska Statute § 21.42.110 generally permits rescission of insurance policies due
> to misrepresentation, the text of the statute does not show it to specifically apply
> to statutorily mandated insurance policies covering USTs. The EPA's regulations,
> however, specifically govern UST insurance policies and the remedies available
> in conjunction with such policies.  These more specific regulations provide only
> for prospective termination of statutorily required UST insurance policies
> following notice to the insured as a remedy for misrepresentation; they do not
> provide for voidance of the policy *ab initio*.

<u>Whittier</u>, 356 F.3d at 1136.  Mid-Continent asks the Court to reject this interpretation, and argues

that interpreting the EPA financial responsibility regulations to preclude rescission of a UST

policy in cases of misrepresentation would be against public policy in Florida.  Therefore, Mid-

Continent argues that Fla. Stat. § 627.409, which generally permits rescission of insurance

policies in cases of misrepresentation, should govern.

The undersigned agrees, however, with the <u>Whittier</u> Court and the EPA's own

interpretation of 40 C.F.R. § 280.97(b) that "the exclusive remedy for a UST policy provider, in the event of an insured's misrepresentation, be a *future* refusal to provide insurance. This interpretation precludes the remedy of rescission." Whitter, 356 F.3d at 1136-37 (explaining the position of the EPA taken in an *amicus curiae* brief in Whittier)(emphasis on word "future" in original).

While Mid-Continent is surely correct in pointing out that insurers might be less likely to insure gasoline stations under this interpretation, the Court agrees with Whittier and the EPA that rescission *ab initio* would have a greater negative effect on UST operator's ability to fund cleanup of contamination. Allowing rescission *ab initio* would widen the "gaps" during which an operator would not be insured and would fail to protect the environment and innocent third parties during these widened gaps. Therefore, the Court concludes that -- if this issue was not waived by King as discussed next -- Mid-Continent may not rescind the policy *ab initio* based on its belief that King misrepresented material facts on his application.

Mid-Continent has another arrow in its quiver, however. Even if the above interpretation is followed, Mid-Continent argues, King has waived this argument because it is a preemption defense which should have been raised as an affirmative defense, but was not. Federal Rule of Civil Procedure 8(c) requires that a responsive pleading set forth certain enumerated affirmative defenses as well as any other matter constituting an avoidance or affirmative defense. Fed. R. Civ. P. 8(c). Whether an argument constitutes an affirmative defense rests on "'the logical relationship between the defense and the cause of action,' and the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings." *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988). Accordingly,

> [w]here a defense does not tend to controvert an element of plaintiff's *prima facie*
> case, where the defense tends to annul the cause of action and not merely provide
> a different legal standard, and where failure to plead the defense would tend to
> surprise the plaintiff, the defense must be considered an affirmative defense.

*Kennan v. Dow Chemical Co.*, 717 F. Supp. 799, 807 (M.D. Fla. 1989)(finding that preemption

constituted an affirmative defense under Florida law because it did not tend to controvert any

element of plaintiff's *prima facie* case).

Before trial, when a party has failed to include an affirmative defense in its answer, upon

request, the court may grant the party leave to amend and have the affirmative defense included.

Fed. R. Civ. P. 15(a)(2); *Easterwood v. CSX Transp., Inc.*, 933 F.2d 1548, 1551 (11th Cir.

1991)(noting that the purpose of requiring the pleading of affirmative defenses in the answer is

to facilitate trial preparation); *see also Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 763 (11th

Cir. 1995)(stating that failure to assert an affirmative defense in the answer is curable by

insertion of defense in pretrial order); *but see Florida Health Serv. Ctr. v. Humana Med. Plan

Inc.*, 190 F. Supp. 2d 1297 (M.D. Fla. 2001)(finding defendant waived a preemption defense by

failing to raise it in any of its four answers to plaintiff's four amended complaints).  Accordingly,

"[a] court may consider an affirmative defense that did not appear in the answer, if the plaintiff

has suffered no prejudice from the failure to raise the defense in a timely fashion."  *Miranda De

Villalba v. Coutts & Co.,* 250 F.3d 1351, 1353 (11th Cir. 2001)(citing *Hassan*, 842 F.2d at

263)(rejecting a claim of error in permitting a statutory defense to be asserted for the first time in

a motion for summary judgment).

Moreover, even at trial the Eleventh Circuit Court of Appeals has noted its "reluctan[ce]

to enforce strictly the harsh waiver requirement where the plaintiff is unable to demonstrate any

prejudice due to the lack of notice."  *Id.*; *Hassan*, 842 F.2d at 260.  Despite the  general rule that

"when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial," *Hassan*, 842 F.2d at 263, the court has focused on avoiding "hypertechnicality in pleading requirements." *Id.* Likewise, the court has reiterated that the purpose of Fed. R. Civ. P. 8(c) is simply, "to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." *Id.* (quoting *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Found.,* 402 U.S. 313, 350 (1971)).

A particularly helpful case, factually analogous to the present case, arose in the United States District Court for the Middle District of Florida. *Kennan*, 717 F. Supp. 799. In *Kennan*, the defendants filed a pre-trial motion for summary judgment asserting federal preemption of state tort law. *Id.* at 802. Specifically, defendants argued that state law directly conflicted with EPA regulations. *Id.* The plaintiff argued, to no avail, that defendants had waived the defense of preemption, an affirmative defense, because they failed to plead it in their answers. *Id.* The court concluded that the availability of a preemption defense was a question of law, and therefore "there [were] no factual issues on which [the opposing party] could conduct discovery that would alter the Court's finding of preemption." *Id.* at 810. Thus, the court held that defendants had not waived the preemption defense by failing to include it in their answer, and properly asserted it in a summary judgment motion. *Id.* The undersigned finds that no surprise or prejudice has occurred in this case. Accordingly, the Court rejects the argument that King has waived his claims based on 40 C.F.R. § 280.97(b).

**B.    Whether Mid-Continent's waived its right to rescind the policy**

Because the Court has ruled above that federal statutes and EPA regulations preclude

rescission of the policy, we need not consider whether Mid-Continent has waived its right to rescind.  This issue is therefore moot.

### C.    Whether Mid-Continent waived various affirmative defenses because any such defenses should have been referenced in the reservation of rights letter pursuant to Fla. Stat. § 627.426(2)

Under Fla. Stat. § 627.426(2), an insurer cannot deny coverage based upon a particular "coverage defense" unless "within 30 days after the liability insurer knew or should have known of the coverage defense" the insurer sends the insured "written notice of reservation of rights to assert a coverage defense."  Fla. Stat. § 627.426(2)(a).  King claims that the reservation of rights letter only listed Exclusion G, and so all the other defenses raised by Mid-Continent cannot be the basis for denial of coverage.

King errs, however, because of the difference between an assertion of a lack of coverage and a coverage defense under Florida law.  When an insurer argues that a loss does not fall within the scope of coverage, as defined in the Policy including the Exclusions, the insurer is raising a lack of coverage argument, and is not asserting a coverage defense.  When the loss falls within the scope of coverage, but the insurer argues that other factors justify not fulfilling the contract, the insurer is asserting coverage defenses.  Here, affirmative defenses 1, 2, 4, 5, 6, 7, 14,18, 19, 22, 23 and 24 all assert that the loss was not in the scope of the coverage.  That is, affirmative defenses 1 and 4 assert that there was no coverage at all because the policy should be voided *ab initio* because of a failure to disclose the 1997 release report.  Affirmative defenses 2, 14 and 18 address whether a confirmed release occurred, which is required for coverage B to apply.  Affirmative defenses 5, 6, and 19 address whether the release occurred outside the time period of the Policy.  Affirmative defenses 7, 22, 23, and 24 relate to types of losses that are

excluded from coverage.  All of the above affirmative defenses argue that the loss did not fit within the definition of coverage as modified by the exclusions.

On the other hand, affirmative defenses 3 and 20, for example, assert that Plaintiff failed to timely report his claim.  Even though this requirement is in the Insurance Contract, the insurer is not asserting a lack of coverage.  Instead, even if the loss would otherwise fall within the coverage definition, the lack of timeliness would allow a denial of coverage, argues the insurer. This is the classic coverage defense, and it must be in the reservation of rights letter required under Fla. Stat. § 627.426(2).  Likewise, affirmative defenses 11 and 12 argue that the insured failed to satisfy conditions precedents or other obligations under the contract, thus excusing Mid-Continent from performance.  These are also coverage defenses rather than lack of coverage arguments, and cannot now be relied upon if they were not included in a timely reservation of rights letter.  Affirmative defense 21 claims that Mid-Continent suffered prejudice due to Plaintiff's actions regarding Plaintiff's alleged claims or damages.  This argument does not relate to a lack of coverage, but merely attempts to excuse performance.  Thus, it is a coverage defense and is barred unless included in a timely reservation of rights letter.  Affirmative defense 15 states that Plaintiffs claims are barred, in whole or in part, by the terms, exclusions, limitations, and conditions in the applicable insurance policy issued by Mid-Continent.  To the extent that the "terms, exclusions, limitations, and conditions" relate to whether the loss is within the coverage definition as modified by the Exclusions, the Affirmative defense is not subject to the notice requirement of Fla. Stat. 627.426.  However, to the extent Mid-Continent seeks to assert that even if the loss were covered the insured failed to meet certain conditions, the failure to do so must have been included in a timely reservation of rights letter.  If not, the insurer cannot now

use that failure to deny the claim.

Finally, affirmative defenses 8, 9, 10, and 13 – arguing lack of mitigation of damages, laches, unclean hands and failure to state a claim – relate to this lawsuit and not the decision to grant or deny coverage itself.  Thus, these affirmative defenses are not covered by Fla. Stat. § 627.426's notice requirement.

> **D.     Whether Mid-Continent's affirmative defenses to King's Counterclaim should be rejected because Mid-Continent failed to present any evidence in support of any of its affirmative defenses.**

To the extent that the affirmative defenses are not barred under Fla. Stat. 627.426, and are not barred by the preclusion of rescission under federal law and EPA regulations, the Court finds that Plaintiff/Counter-defendant Mid-Continent has provided sufficient evidence to raise a genuine issue of material fact regarding each affirmative release which remains.  Thus, summary judgment on these remaining affirmative defenses is not appropriate.

## II. Doc. 40, Plaintiff's Motion for Summary Judgment

In this motion, Mid-Continent argues that the expert witness of King, "has failed to provide evidence that any of this contamination originated, or leaked, from any of the tank systems, whether from the tanks themselves, pipes, dispenser pumps, or related tank equipment, and thus has failed to establish that a 'release' or 'confirmed release' has occurred."  Doc. 40, p. 3.  Instead, Plaintiff insists that the expert is merely speculating as to where and when the discharge occurred.  The Court finds that although the expert stated he could not – at that time – pinpoint the location of the point of discharge, he has provided sufficient reliable scientific information for the jury to conclude that a confirmed release had occurred.  For example, Mr. Hirsch, who has 17 years experience as a professional geologist, averred in his affidavit that he

was able to isolate the contamination discovered in 2004 from the discharge discovered in 1997

using groundwater quality tests involving Volatile Organic Aromatics and Polynuclear Aromatic

Hydrocarbon levels.  Also he was able to aver, "There is no evidence of an off-site source or an

on-site surface spill that could have resulted in the contamination."  Affidavit of James Hirsch,

Attachment to doc. 54.  This evidence is sufficient to create a genuine issue of material fact

regarding the source of the release and the time period.  The fact that Mr. Hirsch was unable to

"pinpoint" the location and timing of the discharges can be used to impeach the testimony, but is

not sufficient to require summary judgment.  Accordingly, summary judgment is not appropriate

for either side on this issue.

Additionally, it appears that two issues regarding the scope of the record in this case may

be outstanding. First, in doc. 26, King moved the Court to compel Mid-Continent to answer

interrogatories regarding the factual bases for its affirmative defenses.  The Court terminated that

motion based on a perceived resolution of the issue by the parties.  If that issue has not been

resolved, and to the extent the information sought is still relevant based on the above rulings,

King must file a revised motion to compel, to which Mid-Continent will be allowed to respond.

Finally, in Doc. 54, King's response to Mid-Continent's motion for summary judgment,

King described himself as caught in "an untenable situation" of not being able to assess the land

further – because the contract prohibits him from incurring clean-up costs without Mid-

Continent's permission – but then being attacked on summary judgment for his expert's failure

to provide more definitive answers regarding the source of the discharge.  To the extent that

King seeks to have the Court compel Mid-Continent to allow further assessments, such a request

must be in a separate motion to which Mid-Continent has the opportunity to respond.

**ORDERED AND ADJUDGED:**

1.      The motion for partial summary judgment at doc. 38 is granted in part and denied
        in part.  The motion for summary judgment at doc. 40 is denied.

**DONE AND ORDERED** this _11th_  day of March, 2008

             *s/Maurice M. Paul*
        Maurice M. Paul, Senior District Judge